IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS C. BROOKS, | ) |
| | ) |
| | ) Civil Action No. 11-1580 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Nora Barry Fischer |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| MON RIVER TOWING, INC., et al., | ) |
| | ) ECF No. 42 |
| | ) |
| | ) |
| Defendants. | ) |

## REPORT & RECOMMENDATION

**I. REPORT**

    A.    Procedural History

Currently pending is the Motion of Defendants to Quash and/or for a Protective Order (ECF No. 42) in the above captioned case in which Plaintiff seeks damages for injuries allegedly sustained while he was working as a deckhand. During discovery, Plaintiff caused a subpoena to be issued on a company known as East Coast Risk Management ("East Coast"), the third-party administrator for the Defendants, whose job it is to administer workplace injury claims for maritime workers employed by the Defendants. The Defendants filed the instant motion because the materials requested include information protected by either the attorney client privilege or the work product doctrine.[1] Defendants also objected to the request for the contractual agreement

---

[1] Defendants assert the application of both attorney client privilege and work product in paragraph 5 of their initial Motion. However, they rely solely on Fed. R. Civ. P. 26, which is solely work product, do not aver that the documents were privileged because they were prepared by or for an attorney and in their Reply they focus solely on work product. Therefore, this issue is being analyzed as a work product protection claim.

1

entered into by East Coast Risk Management and Defendants as such was irrelevant and contained proprietary and confidential information.

According to the pleadings before the undersigned, the Plaintiff signed a release of his claims which the Defendants argue was fair, adequate and voluntarily entered into by the Plaintiff. Plaintiff argues that because this is Defendants' position, they have placed at issue the process employed in obtaining the release as well as their impressions regarding the adequacy of the consideration provided to the Plaintiff. Plaintiff further argues that because the Defendants have placed these mental impressions of the case at issue, they have waived their ability to assert a privilege with regard to their impressions as to the value of the claim. Plaintiff further argues that the documents at issue were prepared during the ordinary course of business and do not constitute work product. (Pl.'s Resp. in Opp'n, ECF No. 44.)

Defendants allege that these documents were originally requested from them and they produced responsive materials from East Coast, together with a privilege log for the documents that were not produced. This was done on September 12, 2012. Rather than challenge the claim of privilege, Plaintiff determined he would directly subpoena the same documents from the third-party administrator.

The Motion to Quash was filed on February 13, 2013. (ECF No. 42.) Plaintiff's Opposition was filed on February 21, 2013. (ECF No. 44.) Defendants filed a Reply on March 1, 2013. (ECF No. 45.) On March 7, 2013, this matter was referred to the undersigned "for the purpose of conducting an in camera review of all documents related to and the issuance of a Report and Recommendation" to the District Court regarding Defendants' Motion to Quash. (ECF No. 46.) A conference was held before the undersigned on March 21, 2013 at which time counsel presented their arguments and the documents were given to the undersigned for review.

Defendants also presented the undersigned with portions of the deposition of Richard Scott at the conference. Plaintiff subsequently filed a letter brief with counter selections from the depositions for the court's consideration. (ECF No. 53.)

B. Arguments of the Parties

Defendants argue that the documents requested are protected by the work product doctrine outlined in Federal Rule of Civil Procedure 26(b)(3) as materials which contain the opinions and conclusions of East Coast as to Plaintiff's claim that were prepared in anticipation of litigation. They further argue that any communications from Mike Somales, an employee of the Defendants, to East Coast, related to the Defendants' opinions, strategy and assessment of Plaintiff's claims. They further object to the production of the contractual agreement between the Defendants and East Coast on the basis that it is not relevant to Plaintiff's Jones Act Claim and furthermore, that it is confidential and proprietary.

Plaintiff alleges that, because Defendants argue that the release signed by Plaintiff was fair and entered into voluntarily by Plaintiff, the mental impressions of East Coast and the Defendants have been placed at issue in this case. Plaintiff also argues that the documents at issue were prepared during the ordinary course of business and do not constitute work product. He argues that the contract between East Coast and Defendants is relevant as Defendants have raised an issue as to which of them employed the Plaintiff at the time of the accident.

As clarified at the March 21 conference, Plaintiff does not dispute the concept that a third-party administrator can claim work product privilege so the court will not engage in an analysis of that issue. Plaintiff's main argument, as articulated both in his brief and at the conference with the undersigned, is that in order for these documents to be protected, they must have been made **primarily** for the purpose of litigation. Dual purpose documents will not

3

suffice. Plaintiff further argues that because the Defendants did not deny Plaintiff's claim, the documents cannot be said to have been created primarily in anticipation of litigation. Plaintiff further argues that Rule 26(b)(3) permits discovery of work product where one party has a substantial need for the same and cannot prepare his case without undue hardship. Finally, Plaintiff asserts the crime – fraud exception to the doctrine on the basis that Mr. Somales played a threatening and coercive role in getting Plaintiff to sign the release. [2]

In Defendants' Reply they assert that the documents averred to be privileged were indeed prepared in anticipation of litigation as they were prompted by and directly address the potential settlement of a claim that Plaintiff might pursue by way of a civil lawsuit. The documents, they argue, involved the discussion of the value of the claim and the opinions of both the Defendants and East Coast as to the merits. They further argue that the mere pleading of the settlement agreement does not result in the "waiver of privilege."[3] (ECF No. 45 at 3.) They elaborate that the signing of the settlement agreement did not mark the beginning of the potential for litigation, but rather, the end; and the information and communications between Mike Somales and East Coast that predate the settlement agreement were made in anticipation of lawsuit being filed by the Plaintiff. They further argue that Plaintiff has failed to show a substantial need for the

---

[2] Although Defendants do not raise this argument, it is the opinion of the undersigned that the crime – fraud exception is only applicable to the attorney-client privilege and not to the work product doctrine. It arises from the case of *United States v. Zolin*, 491 U.S. 554 (1989), in which the Supreme Court stated that the crime – fraud exception to the attorney-client privilege is designed to "assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." 491 U.S. at 563. In addition, the work product doctrine is not a privilege and furthermore, it is codified in the federal rules, which make no mention of this exception. Even if it did apply to the work product doctrine, there is no evidence that these communications were made for the purpose of the commission of a fraud or a crime. The purpose of the communications was solely to engage in a settlement with the Plaintiff.

[3] Throughout the pleadings, the parties refer to the work product doctrine as the work product "privilege." Work product protection is not truly a privilege, but rather, created by the rules of discovery. *See* Kevin P. Allen, *The Attorney – Client Privilege and Work –Product Doctrine in Pennsylvania* at 105 (PBI Press 3d ed. 2012). *See also*, *Hickman v. Taylor*, 329 U.S. 495, 509-510 + n.9.

information and communications. Finally, Defendants argue that the crime – fraud exception to the work product privilege is not applicable in this case.

    C.        Analysis

           1.        Standard for the work product doctrine

The work product doctrine is governed by the uniform federal standard set forth in Rule 26(b)(3) which provides:

> Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the parties case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The leading case in establishing the work product doctrine was *Hickman v. Taylor*, 329 U.S. 495 (1947). Also a Jones Act case, the court found that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id.* at 510. "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals in this case … as the 'Work product of the lawyer.'" *Id.* at 511. As agreed to by the parties, the Third Circuit has extended the work product protection to materials prepared by or for a party's insurer or agents of the insurer. *United Coal Cos. V. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).

5

Unlike the attorney-client privilege, which applies to any communication between a client and his or her attorney seeking legal advice, the work product protection is limited to preparation for litigation. The attorney-client privilege is absolute; however, the work product protection depends on the type of matter being sought as well as the adversary's need for the information, as set forth in the rule itself. The burden of proof in this situation is on the Defendants, as they are the ones asserting the protection of the doctrine. Once Defendants show that the matter in dispute was prepared in anticipation of litigation, the prima facie showing, the burden shifts to the party seeking the discovery, herein the Plaintiff, to prove both a substantial need and an inability to obtain it by other means without due hardship.

    2.  Primary purpose

As stated above, Plaintiff's main argument, as articulated both in his brief and at the conference with the undersigned, is that in order for these documents to be protected, they must have been made **primarily** for the purpose of litigation. Dual purpose documents will not suffice. In support of this, Plaintiff cites *U.S. v. Rockwell International*, 897 F.2d 1255 (3d Cir. 1990)(quoting *U.S. v El Paso Co.*, 682 F.2d 530 (5th Cir. 1982)). Both of those courts stated "litigation need not be imminent… As long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Rockwell Int'l* 897 F.2d at 1266 (citing *El Paso Co.* 682 F.2d at 542 – 43). Counsel for Defendants was given an opportunity to supplement his briefing with any case law that was adverse to this rule. Nothing has been received to date. The undersigned has uncovered no case to support an argument that the primary purpose test is not to be applied in this situation and therefore will proceed on that basis.

In Defendants' reply brief (ECF No. 45), they reference the deposition testimony of Mr. Somales. He was asked by counsel for Defendants the following series of questions, and gave the following answers:

> Q. … Would you agree with me that anytime someone gets injured either for Mon River or Consol or whoever gets injured there is the possibility of litigation?
>
> A. I would imagine, yes. It's the Jones Act.
> ……
>
> Q. And so the policy is to document conversations about those injuries and those particular evaluations in anticipation of the possibility of litigation, correct?
>
> A. Absolutely.

ECF No. 45-1, p. 95, lines 14-18 and 22- p. 96, line 1.

At the conference on March 21, 2013, the Defendants proffered portions of the deposition transcript of Richard Scott, the operations coordinator for Consol. The portions of the transcript designated by Defendants were as follows:

> Q. Whenever a deckhand gets injured, there is always the possibility of a lawsuit or a claims; isn't there?
>
> A. Correct.
>
> Q. Is that one of the reasons that you're careful when documenting your conversations with injured employees?
>
> A. It is.

ECF No. 53-1, p. 93, lines 9-16. Plaintiff requested an opportunity to submit counter designations. (ECF No. 53.) The pertinent portions of the counter designations establish that one of the duties of Mr. Scott was to accompany employees on some of their doctor's appointments. Scott testified that it is his custom and practice to send an e-mail summarizing what occurred at

the doctor's appointment. He stated that the purpose would be to let the supervisors know if there was a change in the situation or if it should remain as currently configured. He further testified that he attended an appointment with Mr. Brooks at Dr. Holets' office on June 7, 2010. He sent an e-mail regarding what happened at that appointment to his superiors as part of his custom and practice. A sample of the testimony is as follows:

> Q. Then if you do go to a doctor's appointment with someone, is it your custom and practice to send an e-mail summarizing that?
>
> A. if I need to keep others apprised of what's going on just to let them know if restrictions have changed or if an issue has arisen.

ECF No. 53, p. 18, lines 14- 19.

Plaintiff argued in his letter brief that the documents at issue were not prepared primarily in anticipation of litigation but rather for ordinary business reporting purposes as supported by this deposition testimony. The court finds that some of the documents, or portions thereof, were prepared in anticipation of litigation as there was an injury to Plaintiff and he had the potential of filing a law suit. This is referenced in some of the withheld documents. However, most of the documents in question seemed to have been prepared in the ordinary course of business of evaluating Plaintiff's injury, determining if he had a claim, and deciding when and if he could return to work. The court has reviewed each of the documents and detailed in the chart attached hereto as Attachment A, whether work product protection applies. There are some documents where only portions were redacted and, to the extent the doctrine applies to those portions, the court finds that the more equitable remedy is to produce only the unprotected portions.

    3.    <u>Substantial need/ inability to obtain equivalent</u>

Assuming the requested documents are protected as work product, the test articulated for circumventing the doctrine is both substantial need for the document and the inability to obtain

the equivalent by other means without undue hardship. Fed. R.Civ. P. 26(b)(3). Plaintiff quotes this language of Rule 26 but does not set forth any documentation to support a claim of substantial need or inability to obtain the equivalent. The Third Circuit has narrowly found "sufficient necessity of 'good cause' to overcome the work-product protection" for a deceased witness, but found no such exception for memoranda and written work-product from living witnesses. *In Re Grand Jury Investigation*, 599 F.2d 1224, 1231-1233 (3d Cir. 1979). For those few documents which the undersigned believes are entitled to work product protection, the undersigned does not find that Plaintiff has met his burden of proving a substantial need or inability to obtain the equivalent without undue hardship.

    4.    Third Party Administrator ("TPA") Agreement between Defendants and East Coast

Defendant alleges that this document is confidential and proprietary and is also irrelevant to Plaintiff's claim. Plaintiff argues that there is a dispute over which Defendant was Plaintiff's employer at the time of the incident and he believes that the TPA will assist in determining this. Defendants do not argue that there is an issue as to which of them was Plaintiff's employer; however, at the March 21 conference counsel simply stated that this document would not lead to any evidence regarding that issue. A copy of this contract was not produced to the undersigned and it is not clear whether or not the district court wanted an opinion on this issue however, to the extent that it would be helpful, the court will make a recommendation.

The standard for relevance under the federal rules is that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense...." "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ. P 26(b)(1). Because of this liberal standard, and because the Plaintiff has raised an issue relative to which the TPA

9

agreement could provide relevant information, which was not rebutted, the undersigned recommends that the district court order the production of the TPA agreement but allow the Defendants to redact any information in the agreement that is confidential or proprietary.

II.     **RECOMMENDATION**

Based upon the above, applying the primary purpose test to the documents contained in the privilege log, the undersigned recommends that Defendants' Motion be denied in part and granted in part as set forth in Attachment A which is incorporated herein. In addition, the undersigned recommends that the Third Party Administrator agreement at issue be produced subject to redaction of any confidential or proprietary information.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

Dated: April 3, 2013                                        BY THE COURT

                                                            _____
                                                            LISA PUPO LENIHAN
                                                            Chief U.S. Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*